THE STATE (THE BELVIDERE BANK, PROSECUTOR,) v. GEORGE W. TUNIS, COLLECTOR OF BELVIDERE.

1. Under the tax act of 1851, by which stocks of corporations are to be taxed in the hands of the stockholders, and so much of the property of corporation as is represented by stock taxed in the hands of stockholders is exempt from taxation, the surplus fund and real estate of a bank are exempt from taxation, both belonging to the stockholders and being represented by the stock in their hands.

2. The stock of an incorporated company is to be valued, for taxation in the hands of a stockholder, at its fair market value, and not at its nominal or par value.

This was a *certiorari*, directed to the collector of Belvidere township, in the county of Warren, to bring up the tax assessment in 1851, against the Belvidere Bank, located in that township. The assessment was upon the bank, for the value of its banking house and the amount of its *surplus*, being the supposed value of its assets above the amount of capital.

The case was argued before the CHIEF JUSTICE, and ELMER and POTTS, Justices, by *Vroom*, for prosecutor, and *Dayton*, for defendant.

The CHIEF JUSTICE. The exception to the assessment in this case is, that the bank is assessed for its surplus· capital. The ground of the exception is, that the entire capital stock of the bank is exempted from taxation by virtue of the fourth article

of the fifth section of the act, which exempts from taxation " so much of the property of incorporated companies, represented by the capital stock thereof, as by virtue of this act is taxed in the hands of the stockholders." The true construction of this article creates the difficulty.

The view of the assessor appears to have been, that the stockholders are to be assessed for the capital stock at its par value, and that the surplus funds or undivided profits of the bank, and the banking house are to be assessed to the corporation. But it is perfectly clear that the capital stock in the hands of the stockholders *represents* the entire property of every incorporated company. All the property of the company goes to constitute the value of the stock, and upon the dissolution of the corporation it all goes to the stockholders, in proportion to their respective shares.

This question came before the Court of Appeals of Maryland, under their tax law of 1841. That act directed, among other things, that all real and personal property in the state, all stocks or shares in any bank, institution, or company incorporated by the state, and all other property, of every description whatsoever, should be valued agreeably to the directions of the act, and should be chargeable, according to such valuation, with the public assessment. It expressly exempted from taxation the judgments, bonds, and other securities belonging to any bank, the capital stock whereof was made subject to taxation by the provisions of the act; but it contained no exemption of the real or other personal property of the bank. An assessment was made upon the capital stock of the bank, and also upon its real estate, including its banking house, furniture, and fixtures, and various other houses and lots, which the bank held as proprietor. The assessments upon the bank were set aside, the court holding " that the property of a bank, being represented by the shares of stock therein, both cannot be taxed ; and therefore, when the tax is imposed on the stock in the hands of shareholders, the property of the bank, real or personal, cannot also be taxed." The tax *cases*, 12 *Gill & John.* 117.

And in a later case, Chief Justice Martin, in delivering the

opinion of the same court, said, "It is perfectly understood that the stock of a bank is the representative of its whole property; and when a tax has been laid on the stock in the hands of the shareholders, the real and personal estate of the company becomes exempt from taxation. To tax both the real and personal property and the stock would be a double tax, and therefore illegal and unjust." *Gordon's Executor* v. *The Mayor of Baltimore*, 5 *Gill's Rep.* 236.

But it is insisted that the term capital stock, as applied to corporations, has a fixed and definite meaning; that it designates the amount of capital contributed by the stockholders for the use of the company, which, in the annual reports of the banks to the legislature, is always specified as property distinct from the *surplus* and other property of the bank; that the legislature designed to tax that capital at its par value to the stockholders, as their property, and to leave the undivided surplus and other property of the corporation to be taxed to the bank.

It is certainly probable that this idea may have been in the mind of the draftsman of the clause in question. But the decisive answer to this construction of the law is, that the second section of the act imperatively requires that all personal estate shall be assessed at the *actual value* thereof. The manifest policy of the whole statute is to assess each citizen according to his actual wealth, so that taxation shall be in proportion to property. But it is obvious that if stock in the hands of the stockholder be assessed at par, without regard to its actual value, the whole policy of the statute would be defeated. For if assessed at its full nominal value when above par, it must be assessed in like manner when below par, and the stockholder would thus be compelled to pay a tax for property which is utterly valueless. Nor is it seen how it would be possible, in regard to railroad, manufacturing, or any other, except mere money corporations, to ascertain what the surplus or excess of property over the par value might be.

It is objected, however, that it would be impossible to ascertain the actual value of the shares, which ought not to depend upon the fluctuations of the stock market. But no diffi-

culty is found in appraising stocks according to their actual value, whenever required by law; and none, it is apprehended, could exist in making a sufficiently accurate valuation for the purposes of a just assessment.

In the State of New York, taxes are assessed upon a *cash* valuation of the stocks of all manufacturing and turnpike corporations. It may be added, moreover, that by the laws of New York, which in this particular appear to be eminently just and equitable, the individual stockholder is exempt from all taxes whatever upon property invested in the stock of incorporated companies liable to taxation upon their capital. 1 *Rev. Stat.* (*3d ed.*) 446, *Tit.* 2, § 15.

That all moneyed or stock corporations deriving profit from their capital (excepting manufacturing, turnpike, and insurance companies) are taxed for their real estate at its actual value, and for their capital stock paid in, and secured to be paid in at par, deducting the cost of the real estate owned by the company. This leaves each portion of the real estate to be taxed in the town where situate, the balance of the capital deducting the cost of the real estate to be taxed as personal, and imposes equal burthens upon non-resident and resident stockholders. 1 *Rev. Stat.* (*3d ed.*) 470, *Tit.* 4, § 3; *Mohawk and Hudson River Railroad Co.* v. *Clute,* 4 *Paige* 395; *Bank of Utica* v. *City of Utica,* 4 *Paige* 399.

If the assessment was directed to be made upon the capital stock at its par value there might be propriety in taxing the surplus capital as so much accumulated wealth; but an assessment upon the stock at its actual value necessarily includes the accumulated surplus. An additional tax, therefore, upon the surplus would not only be in contravention of the express language of the statute, but would be a double taxation upon the same property, and therefore unequal and unjust.

The assessment is illegal, and must be set aside

Potts, J. The capital stock of the Belvidere Bank consists of 3000 shares, the par value of which is fifty dollars a share. In addition to the capital stock, the bank has accumulated a fund of $46,000, which belongs to the stockholders, but has

not been divided among them, being retained and used for banking purposes, and out of which losses are paid when they occur. This surplus fund makes the shares of stock actually worth sixty-three dollars each, which is about their market price.

In 1851, the assessor of the town of Belvidere assessed upon this $46,000, as personal property of the corporation, a tax of $99.82, for county, town, and school purposes; and this assessment is complained of as illegal.

The supplement to the act concerning taxes, approved March 14, 1851, provides, section 2, that all lands and all personal estate owned by *individuals* or *corporations* shall be liable to taxation, subject to the exemptions mentioned in the 5th section; the 4th section declares that the term personal estate shall include *stocks in corporations;* and the 5th section exempts "so much of the property of incorporated companies, *represented by the capital stock thereof, as* by virtue of this act is *taxed in the hands of the stockholders.*"

On the part of the prosecutor, it is insisted that this surplus belongs to the stockholders, and is represented by the stock as really as is the amount actually paid in as capital; that the surplus increases the value of the shares; that the market value of these shares is actually sixty-three dollars, instead of fifty, in consequence of their representing the surplus fund, as well as the capital of the bank; that in several townships the stockholders have been assessed for the shares they hold at this valuation; and that to tax the stock in the hands of the stockholders at its full market value, and also to tax this surplus in the hands of the corporation, is in effect to tax the surplus twice; while, on the part of the defendant in *certiorari,* it is argued that, by the phraseology used, the legislature meant only to exempt the actual amount *paid in as capital* from taxation in the hands of the corporation, and to subject the stock in the hands of the stockholders to taxation, at most, at its *par value,* leaving the surplus fund to be taxed, as has been done.

It appears, from the state of the case, that the assessors in the county where this bank is located have differed upon this

question. In the township of Oxford, they assessed the stock at $63 per share; in Blairstown, at $60; and in Harmony and Belvidere, at $50. It is important that the construction of the statute should be settled, in order that the rule prescribed by it in respect to the taxation of this description of property should be applied with uniformity throughout the state.

It was manifestly the intention of the legislature, in this supplement, to subject the real and personal estate of corporations to taxation in the same ratio as that of individuals. The statute enacts, *first*, that the real and personal estate of individuals and corporations shall be liable to be taxed; *second*, that the stocks of corporations shall be considered personal estate, and of course it thus becomes taxable in the hands of the holders: and having thus made the property of corporations taxable, and then the stocks of corporations held by individuals also taxable, to avoid the inference of an intention to tax the same property twice, first in the hands of the corporation, and then in the hands of the individuals who compose it, they include in the *exempting* section " *so much* of the property of incorporated companies represented by the capital stock thereof, *as* by virtue of this act, *is taxed* in the hands of the stockholders."

The stock of a corporation represents in fact the whole property owned by the corporation, subject to its debts. The value of the stock indicates the value of the property; the quantity of stock held by an individual indicates the proportionate share he owns of the property. When, however, a statute speaks of property represented by the stock of an incorporated company, it will be construed to mean such property only as is held and possessed by the company for the necessary and essential purposes and objects of the corporation, for such property alone can be considered as strictly within the contemplation of the legislature. But the banking house and lot, and its appropriate furniture, in which a banking house invests part of its capital, and which is absolutely necessary to enable it to carry on its business, and real property which it is compelled to take for debts, and hold until it can be converted into money, and which also absorbs a part of its capital, must be considered

as within the language of the act and the intention of the legislature; and so of a reasonable surplus fund retained by a bank for its greater security against possible losses and the fluctuations of business. It is at the same time a security to the public, and, though not strictly required by their charters, it is nevertheless a very necessary and essential requisite of a sound and safe institution. These items of property, together with what remains unexpended of the capital actually paid in, constitute the property represented by the stock of a banking corporation, and is not taxable to the corporation.

It follows that the stock should be assessed at its fair market value, and not at its par value. There is nothing in the act which indicates an intention to make any distinction between stocks and other kinds of taxable property in the hands of individuals. Stocks are expressly made taxable as personal estate, and the 2d section enacts that all real and personal estate "shall be assessed at its *actual value.*" Language could not be more explicit. Some stocks are greatly above, some greatly below the par value; and it would be as unjust, as it is contrary to the language of the act, to disregard the real, and adopt a mere fictitious value as the basis of taxation.

The assessment complained of is erroneous, and must be corrected.

ELMER, J., concurred.

CITED *in State* v. *Randolph,* 1 *Dutch.* 430; *State* v. *Parker,* 6 *Vr.* 580.